UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNIE W. BYRD, III, | ) | CASE NO: 5:18-CV-210 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| WARDEN, DAVID GRAY, | ) | |
| | ) | REPORT & RECOMMENDATION |
| Respondent. | ) | |

### I. Introduction

Petitioner, Johnnie W. Byrd, III, an Ohio prisoner, is currently serving an aggregated nine-year prison term for engaging in a pattern of corrupt activity with a criminal forfeiture specification, grand theft, telecommunications fraud, illegal use of food stamps or WIC program benefits, and money laundering, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Byrd claims that there was insufficient evidence to sustain his convictions and that his convictions are against the manifest weight of the evidence. (ECF No. 1). Respondent, Warden David Gray, filed a return of writ on July 20, 2018. (ECF No. 5). Byrd filed a traverse on August 30, 2018. (ECF No. 10).

This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Byrd's petition and other case-dispositive motions. Because Byrd's petition has presented only meritless or non-cognizable claims, I recommend that the Court deny Byrd's petition in its entirety and not grant him a certificate of appealability.

### II. Relevant Factual Background

The Ohio Court of Appeals for the Ninth Appellate District set forth the following facts on direct appeal:

1

{¶2} In 2009, Mr. Byrd asked his girlfriend, Heather Fry, to form a corporation so that he could run a convenience store in Akron. After creating Byrd House, Inc., Ms. Fry also completed the paperwork that was required for the store to sell tobacco and alcohol and accept electronic benefits transfer (EBT) cards. Mr. Byrd could not complete the paperwork in his own name because he had a disqualifying criminal history. He was, however, named as the corporations' president and statutory agent, and he established a checking account on behalf of the corporation.

{¶3} From 2009 to 2012, Mr. Byrd operated the convenience store. Because of the number of EBT transactions that it had for its size, it drew the attention of law enforcement, which began investigating the store. The investigation examined whether the store allowed customers to use EBT funds for improper items such as tobacco and alcohol. It also examined whether the store allowed customers to convert EBT funds into cash. After a series of controlled buys revealed that both practices were occurring in the store, the Grand Jury indicted Mr. Byrd for engaging in a pattern of corrupt activity, grand theft, telecommunications fraud, and illegal use of food stamps. Suspecting that Mr. Byrd was using the revenue of the company to pay the mortgages of properties that his mother owned, the Grand Jury also indicted Mr. Byrd for money laundering. A jury found him guilty of the offenses, and the trial court sentenced him to nine years in prison. Mr. Byrd has appealed his convictions, assigning as error that they are not supported by sufficient evidence and are against the manifest weight of the evidence. Mr. Byrd has argued his assignments of error together, and this Court will address them together.

### III. Relevant State Procedural History

#### A. State Court Conviction

On March 8, 2013, a Summit County, Ohio grand jury indicted Byrd on one count of engaging in a pattern of corrupt activity with a criminal forfeiture specification in violation of Ohio Rev. Code § 2923.32 (A)(1) and (B)(1) (Count 1); one count of grand theft in violation of Ohio Rev. Code § 2913.02 (A)(3) (Count 2); one count of telecommunications fraud in violation of Ohio Rev. Code § 2913.05(A)(A) (Count 3); one count of illegal use of food stamps or WIC program benefits in violation of Ohio Rev. Code § 2913.46 (B or (C)(1)) (Count 4); and one count of money

laundering in violation of Ohio Rev. Code § 1315.55 (A)(1) or (A)(3) (Count 5). (ECF No. 5-1 at Ex. 1). On May 20, 2015, a jury found Byrd guilty on all counts. (ECF No. 5-1 at Ex. 2). The trial court sentenced Byrd to serve nine years for engaging in a pattern of corrupt activity with a criminal forfeiture specification, three years for grand theft, and 12 months for money laundering, which resulted in an aggregate nine-year sentence to be served concurrently. (ECF No. 5-1 at Ex. 2).

### B. Direct Appeal

On July 13, 2015, Byrd, then represented by counsel, directly appealed. (ECF No. 5-1 at Ex. 3). Byrd raised the following assignments of error:

> **Assignment of Error I:** The trial court erred when it overruled a timely defense motion for acquittal pursuant to criminal rule 29 as there was not sufficient evidence presented by the state of Ohio to establish a prima facie case of the crimes charged.
>
> **Assignment of Error II:** The verdict of the trial court was against the manifest weight of the evidence since the state of Ohio failed to prove each and every element of the crimes charged beyond a reasonable doubt.

(ECF No. 5-1 at Ex. 4). On December 14, 2016, the Ohio Court of Appeals affirmed Byrd's convictions and sentence. (ECF No. 5-1 at Ex. 6). The court of appeals held that Byrd's convictions were supported by sufficient evidence and not against the manifest weight of the evidence. (ECF No. 5-1 at Ex. 6).

### C. Appeal to the Ohio Supreme Court

On January 17, 2017, Byrd appealed *pro se* to the Ohio Supreme Court. (ECF No. 5-1 at Ex. 7). Byrd's memorandum in support of jurisdiction raised the following propositions of law:

> **Proposition of Law I:** The trial court erred when it overruled a timely defense motion for acquittal pursuant to Criminal Rule 29 for insufficient evidence.

>   **Proposition of Law II:** The verdict of the trial court was against the manifest weight of the evidence since the State of Ohio failed to prove each and every element of the crimes charged beyond a reasonable doubt.

(ECF No. 5-1 at Ex. 8). On May 17, 2017, the Ohio Supreme Court declined jurisdiction. (ECF No. 5-1 at Ex. 10).

### IV. Federal Habeas Corpus Petition

On January 26, 2018, Byrd petitioned *pro se* for a writ of habeas corpus from this Court. (ECF No. 1). Byrd asserted the following grounds for relief:

>   **Ground One:** I am being held in violation of the U.S. Constitution for reason my convictions are not sustained by sufficient evidence as required by the due process clause of the 14th Amendment.
>
>   **Supporting Facts:** Both the State and the Court of Appeals have acknowledged that there is no direct evidence that the Petitioner committed these alleged crimes. The Court of Appeals identified the correct legal standard but its decision was contrary to and/or an unreasonable application of that standard.
>
>   **Ground Two:** The verdict of the trial court was against the manifest weight of the evidence.
>
>   **Supporting Facts:** The evidence produced at trial supports his defense over the State's case.

(ECF No. 1).

### V. Legal Standards

#### A. Jurisdiction

28 U.S.C. § 2254(a) authorizes district courts to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him" 28 U.S.C. § 2241(d). The Court of Common Pleas of Summit County sentenced

Byrd and Summit County is within this court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Byrd's § 2254 petition.

### B. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991).

Thus, "errors in application of state law ... are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

### C. AEDPA Standard of Review

28 U.S.C. § 2254, as amended by the AEDPA, provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

5

>  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous." *Id.* "The state court's application of clearly established law must be objectively unreasonable." *Id*.

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision

6

only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's … determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet… because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id*. at 102. "It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state courts decision conflicts with this Court's precedents" and "goes no further." *Id*. Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## VI. Analysis

### A. Ground One

7

Byrd asserts that there was insufficient evidence to sustain his state court convictions. Federal habeas review is available for insufficient evidence arguments. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Herrera v. Collins*, 506 U.S. 390, 401 (1993). For a federal habeas corpus court, the relevant question on review of the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. This "inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera*, 506 U.S. at 402 (emphasis in original).

"Because both the *Jackson v. Virginia* standard and AEDPA apply to [Byrd's sufficiency of the evidence claim], 'the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by Jackson; [and] second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). The Sixth Circuit has explained the application of this two-step analysis as follows:

> First, we must ask whether the evidence itself was sufficient to convict under *Jackson*. The inquiry ends if the panel determines that there was sufficient evidence to convict Stewart. If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was 'objectively unreasonable' in concluding that a rational trier of fact could find Stewart guilty beyond a reasonable doubt.

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010).

1. <u>Sufficient Evidence Supports Byrd's Convictions for Illegal Use of Food Stamps or WIC Program Benefits, Telecommunications Fraud, and Grand Theft.</u>

8

Byrd argues that there was insufficient evidence to support his convictions for illegal use of food stamps or WIC program benefits, telecommunications fraud, and grant theft. (ECF No. 10). Specifically, Byrd argues that there is no evidence that he knew that illegal food-stamp transactions were occurring at the store. (ECF No. 10). The Ohio Court of Appeals rejected these arguments:

> {¶7} Revised Code Section 2913.46(B), concerning the illegal use of food stamps, provides that '[n]o individual shall knowingly possess, buy, sell, use, alter, accept, or transfer supplemental nutrition assistance program benefits * * * or any electronically transferred benefit in any manner not authorized * * *.' Section 2913.0S(A), concerning telecommunications fraud, provides that '[n]o person, having devised a scheme to defraud, shall knowingly * * * transmit, or cause to be * * * transmitted by means of a wire, * * * telecommunications device, or telecommunications service any * * * data, sign, signal, * * * or image with purpose to execute or otherwise further the scheme to defraud.'
>
> A person acts knowingly * * * when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.
>
> R.C. 2901.22(B). Recognizing that establishing someone's mental state is 'often difficult to prove directly,' the Ohio Supreme Court has held that it can 'be inferred from the surrounding circumstances.' *State v. Logan*, 60 Ohio St.2d 126, 131 (1979).
>
> {¶8} Ms. Fry testified that Mr. Byrd ran the day-to-day operations at the store. The agents who investigated the store testified that it was only 820 square feet, but had EBT sales that were characteristic of a store the size of Wal-Mart. Upon review of the record, we conclude that, although there was no direct evidence that Mr. Byrd knew illegal EBT activity was occurring within the store, in light of the magnitude of the illegal activity, his knowledge of it can be inferred from the surrounding circumstances. *Compare State v. NRAG, L.L.C.*, 12th Dist. Fayette No. CA2008-12-043, 2009-Ohio-

> 4137, 9l 23 (concluding that there was insufficient evidence to find that company knew of employee's illegal sales when CEO of company refused to engage in an improper transaction).
>
> {¶ 9} Regarding his conviction for grand theft under Section 2913.02, Mr. Byrd argues that the State failed to establish beyond a reasonable doubt the amount of the EBT transactions that were improper. He notes that the State's own witnesses testified that their fraudulent transactions included authorized goods.
>
> {¶10} Initially, we note that the 'value of stolen property is not an essential element of the offense of theft but, rather, is a finding that enhances the penalty of the offense.' *State v. Smith*, 121 Ohio St.3d 409, 2009-Ohio-787, ¶ 13. Mr. Byrd, therefore, was not entitled to a judgment of acquittal on the grand theft count even if the State could not establish the amount of the theft. Regarding the amount of the theft, the State attempted to prove it by comparing the amount of the convenience store's EBT sales to those done by stores of comparable size and location. According to agents, the five stores it examined that were similar to Mr. Byrd's store had EBT sales that normally ranged from $2,000 to $4,000 a month. Mr. Byrd's store, on the other hand, had EBT sales that sometimes exceeded $100,000 in a month. According to an accountant, between October 2009 and March 2012, Mr. Byrd's store had total sales that were just under two million dollars. Approximately 72% were EBT sales. The State, noting that the most EBT sales any of the comparable stores had during those months was about $12,000, argued that, even if Mr. Byrd's store had $12,000 in legitimate sales each month, the illegal transactions would still total over $750,000. The State's calculation is accurate. Upon review of the record, we conclude that, viewing the evidence in a light most favorable to the State, the jury's finding that Mr. Byrd stole between $750,000 and $1,500,000 is supported by sufficient evidence.

The Court agrees. The Ohio Court of Appeals correctly detailed the elements of illegal use of food stamps or WIC program benefits and telecommunications fraud. Ohio Rev. Code § 2913.02 (A) provides that:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> …
> (3) deception.

10

It appears that Byrd contests only whether the knowledge element of each of these crimes was met. Therefore, the Court will discuss only whether there was sufficient evidence that Byrd "knowingly" committed these crimes.

Byrd notes (and the Ohio Court of Appeals agreed) that the prosecutor did not present at trial any *direct* evidence that he knew that illegal food-stamp transactions were occurring at the store. However, Byrd overlooks the fact that the State could prove by circumstantial evidence the offense's knowledge element—and that a reasonable juror could infer his mental state from those circumstances. Ohio law does not require direct evidence to prove that a person knowingly committed an act; rather, it recognizes that a defendant's mental state is subjective and that it can be inferred circumstantially. *State v. Wright*, 31 Ohio App. 3d 232, 234 (10th Dist. Ohio 1986) ("The state of mind of a defendant is subjective and can be determined from inferences arising from the circumstances."); *State v. Logan*, 60 Ohio St. 2d 126, 131 (1979), abrogated on other grounds, *State v. Rance*, 85 Ohio St. 3d 632 (1999)); *State v. Collins*, 89 Ohio St. 3d 524, 530 (2000) ("The state most commonly proves criminal intent through circumstantial evidence.").

Here, the state presented evidence at trial that Byrd ran the store's day-to-day operations and that the store's food-stamps sales were overwhelmingly disproportionate to the store's small size. That evidence was sufficient for the jury to infer that Mr. Byrd—who ran the store—must have known of the fraud.

Byrd questions how food-stamp sales can be used as circumstantial evidence of his knowledge when the stolen property's value is not an element of the crime. (ECF No. 10 at 8). As the court held in *State v. Smith*, under Ohio law, the property's value is a special finding used to determine only the degree of the crime. 121 Ohio St. 3d 409 (2009); *e.g.* Ohio Rev. Code § 2913.02 (B)(2) (designating the violation's degree based on, among other things, the stolen property's

11

value). Byrd misunderstands that some evidence—like the value of the fraud or theft—has evidentiary value even though it does not constitute a criminal element. Here, the transactions' value is part of the crime's circumstances. Just as value can be used to determine the degree of the crime, so too can it be used by the jury to determine the extent or widespread nature of the fraud.

Relying on *State v. NRAG, L.L.C.*, Byrd also questions whether the jury could infer that he knew that the illegal transactions were occurring at the store beyond a reasonable doubt—or if that inference is merely reasonable speculation. (ECF No. 10 at 8 (citing 2009-Ohio-4137, ¶ 23 (12th Dist. Ohio 2009)). In *NRAG* the court held that the "state failed to present sufficient evidence to permit a reasonable juror to infer that the state proved beyond a reasonable doubt the 'knowledge' or 'knowingly' element of R.C. 2913.46(C)(1)." *NRAG, L.L.C.*, 2009-Ohio-4137, at ¶ 23. However, *NRAG* is noticeably distinguishable. In *NRAG*, the court found that "the evidence produced at trial fails to clearly establish that [store manager] was present when any of the illegal sales occurred, and on at least one occasion, he refused to allow an undercover agent to purchase beer using a food stamp EBT card." *Id*. Here, in contrast, while there was no evidence that Byrd was present when the illegal sales occurred, there was no evidence that Byrd refused to allow illegal transactions to occur, either. Additionally, in *NRAG*, the court does not discuss any evidence presented regarding the amount of illegal sales. In Byrd's case, the prosecution relied heavily on the amount of illegal transactions and Byrd's running of the daily operations at the store to establish beyond a reasonable doubt that Byrd knew what was occurring.

Lastly, Byrd argues that circumstantial evidence is sometimes nothing more than reasonable speculation; thus, it is not sufficient to meet the State's beyond-a-reasonable-doubt burden of proof. (ECF No. 10 at 9-10). Byrd is correct that there are instances in which circumstantial evidence is legally insufficient. For example, in *Newman v. Metrish*, the Sixth Circuit concluded that

circumstantial evidence was insufficient to support a murder conviction because, while there was circumstantial evidence of the Defendant's intent and earlier possession of the suspected murder weapon, there was no evidence—circumstantial or direct—that the Defendant was at the scene of the crime. 543 F.3d 793, 796 (6th Cir. 2008). Here, in contrast, Ms. Fry directly testified that Mr. Byrd ran the day-to-day operations at the 820-square-feet store and, therefore, was very often present at the scene of the crime. There was also circumstantial evidence of the widespread food-stamp fraud at the store, as the agents testified that, despite the small size of the store, its food-stamp transactions mirrored a large retail store, such as Walmart. The Court must look at the evidence in the light most favorable to the prosecution. Under that light, a rational juror could have found that Byrd knew beyond a reasonable doubt that the food-stamp transactions were illegal.

Because the Court finds that there was sufficient evidence to support Byrd's convictions for illegal use of food stamps or WIC program benefits, telecommunications fraud, and grand theft, the Court must defer to the jury's guilty verdict.

2. Sufficient Evidence Supports Byrd's Remaining Convictions.

Because he argues that there was insufficient evidence to support his convictions for illegal use of food stamps or WIC program benefits, telecommunications fraud, and grand theft, Byrd believes that there is also insufficient evidence to support his convictions for money laundering and engaging in a pattern of corrupt activity. Byrd does not support his insufficient-evidence claim further; instead, he rests his allegation on a misapplied logical principle. Because the Court found above that Byrd's other convictions are supported by sufficient evidence, the Court also finds that sufficient evidence supports Byrd's convictions for money laundering and engaging in a pattern of corrupt activity.

Thus, Byrd's Ground One claim lacks merit and should be dismissed with prejudice.

13

### B. Ground Two

Byrd also asserted that his convictions were against the manifest weight of the evidence. This argument fails because manifest-weight-of-the-evidence questions do not present federal issues. *See Tibbs v. Florida*, 457 U.S. 31, 45 (1982); *see also Steele v. Tambi*, 2007 U.S. Dist LEXIS 33318, at *38 (N.D. Ohio 2007). Byrd now concedes that Ground Two does not present an issue for habeas review. (ECF No. 10 at 11). Thus, Ground Two should be dismissed because it does not present a cognizable claim for federal habeas review.

## VII. Certificate of Appealability

### A. Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B. Analysis

Byrd's Ground One claim lacks merit and his Ground Two claim fails to present a cognizable issue for habeas review. If the Court accepts the foregoing recommendation, then Byrd has not made a substantial showing of a denial of a constitutional right; thus, I recommend that the Court not issue a certificate of appealability.

## VIII. Recommendation

Because Byrd's petition has presented only meritless or non-cognizable claims, I recommend that the Court deny Byrd's petition for a writ of habeas corpus under 28 U.S.C. § 2254 in its entirety and not grant him a certificate of appealability.

DATED: December 3, 2020

*Carmen E. Henderson*
**Carmen E. Henderson**
**United States Magistrate Judge**

_____

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas* v. *Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).